IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO. 7:07-CV-139-FL

MELODY D. GAROFOLO,                 )
                                    )
    Plaintiff/Claimant,             )
                                    )
          v.                        )          **MEMORANDUM AND**
                                    )          **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
    Defendant.                      )

This matter is before the Court on the parties' cross motions for judgment on the

pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Melody D. Garofolo ("Claimant") filed

this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her

applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for

filing responsive briefs has expired and the pending motions are ripe for adjudication. Having

carefully reviewed the administrative record and the motions and memoranda submitted by the

parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings,

granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of

the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB on 9 June 2003, alleging disability beginning 1

July 2002 due to autoimmune disorders, lupus and hepatitis C. (R. 59-62). Her claim was

denied initially and upon reconsideration. (R. 34-37, 43-45). A hearing before the

Administrative Law Judge ("ALJ") was held on 14 December 2005, at which Claimant was

represented by counsel and a vocational expert ("VE") appeared and testified. (R. 309-40). On

20 April 2006, the ALJ issued a decision denying Claimant's claim. (R. 19-31). On 18 May 2007, the Appeals Council denied Claimant's request for review. (R. 6-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give controlling weight to the opinion of Claimant's treating physician; (2) improper assessment of Claimant's credibility; and (3) improper assessment of Claimant's residual functional capacity ("RFC") . Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1. ("Pl.'s Mem."). In the

3

alternative, Claimant asserts there is new and material evidence that should be incorporated into the record and taken before the ALJ on remand pursuant to sentence six of 42 U.S.C. § 405(g). Pl.'s Mem. at 16, 18.

## FACTUAL HISTORY

### I. ALJ's Findings

The ALJ's decision followed the above-described sequential evaluation process, concluding at step five that Claimant had the RFC to perform other work. (R. 30). As such, the ALJ found Claimant "not disabled" as defined in the Act.

At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: (1) systematic lupus erythematosus; (2) depression ; (3) an adjustment disorder; (4) chronic diarrhea; and (5) Epstein Barr virus. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> [C]laimant's mental problems cause the [C]laimant a moderate restriction of the activities of daily living (does not watch much television, listen to music or do much reading), moderate difficulties in maintaining social functioning (does not social much, has few or no friends), mild deficiencies of concentration, persistence, and pace resulting in a failure to complete tasks in a timely manner...and no episodes of decompensation for an extended duration (no psychiatric or psychological treatment). The [C]laimant also does not meet the Commissioner's "C" criteria for affective disorders or anxiety-related disorders.

(R. 29).

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to sit six hours in an eight-hour workday, to stand and walk two hours in an eight-hour workday with an option to sit or stand at will and to frequently lift and carry five pounds with the heaviest weight lifted occasionally of ten pounds. (R. 25). The ALJ also identified the following non-exertional limitations: occasional bending, stooping and reaching overhead, no climbing or crawling, no more than frequently fingering or handling, no concentrated exposure to lung irritants, no production rate or production line work in a low-stress environment (no more than occasional decision-making or changes in work setting) and a restroom must be accessible on-site. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible based upon the medical evidence. (R. 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a waitress, restaurant manager and a customer service representative. (R. 30). Nonetheless, at step five, upon considering Claimant's age, education, wo rk experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as telephone quotation clerk and a surveillance system monitor. (R. 31).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old, married and unemployed. (R. 312-13). Claimant attained a ninth grade education and never received her GED. (R. 313). Claimant was last employed as a manager of a restaurant for Hilton Hotels. (R. 314). Prior to that position, she worked for Wal-Mart as a customer service manager and cashier and for a restaurant as a waitress and bartender. (R. 326-27).

5

Claimant stated she is unable to perform her past work due to frequent diarrhea (R. 315) and symptoms related to Epstein-Barr virus, hepatitis C, Lupus (R. 315, 318, 329), osteoporosis, depression and pleurisy. (R. 315, 318-19, 322, 329). Claimant testified to having diarrhea up to seven times a day, a side-effect of radiation damage associated with the treatment of her cervical cancer. (R. 315). Claimant explained one daily dose of Lomotil controlled her diarrhea in the past; however, she presently takes six doses a day. (R. 327-28). Claimant has endured significant weight loss as a result of her chronic diarrhea. (R. 317-18). Claimant experiences fatigue as a result of Epstein-Barr virus, hepatitis C and Lupus. (R. 315, 318, 329). Claimant stated she must lay down three to four times each day for up to thirty minutes as her impairments prevent her from sleeping soundly at night. (R. 319).

Claimant's lupus causes pain in her joints, knees and ankles on a continual basis. (R. 319-20). Claimant stated the pain is managed somewhat with prescription-strength Tylenol and described her pain level as a six or seven on a scale of one to ten. (R. 320-21). Claimant also experiences breakouts as a result of Lupus; however, they are controlled with Plaquenil. (R. 320). Claimant also has back pain associated with osteoporosis. (R. 319)

Claimant testified to suffering from depression since the late 1990s and has taken anti-depressant medications since 2000. (R. 322-23). Claimant experiences the following symptoms as a result of depression: loss of appetite, loss of sleep, agitation and poor concentration and memory (R. 323). Claimant stated further that she has received no formal treatment from a counselor or psychiatrist because she has no medical coverage for such treatment. (R. 330). Claimant uses a nebulizer twice a month for breathing problems associated with pleurisy. (R.

6

332). Claimant also experiences frequent nausea and vomiting but explained she is unsure what causes these symptoms. (R. 315, 317).

As for daily activities, Claimant performs no household chores with the exception of cooking dinner on occasion. (R. 324). In fact, Claimant testified to spending the majority of most days using the restroom, watching television or laying down. (R. 325-26). She spends the first couple of hours of each day in the bathroom. (R. 325). Claimant described a "good" day, of which she has approximately two per week, as one in which she is able to eat breakfast and lunch and prepare dinner for her family. (R. 321, 324). Claimant rarely drives and when she does, it is to visit her physicians. (R. 324).

## III. Vocational Expert's Testimony at the Administrative Hearing

Dixon Pearsall, Ph.D., testified as a VE at the administrative hearing. (R. 54-57, 333-39).

After the VE's testimony regarding Claimant's past work experience (R. 334), the ALJ posed the following hypothetical:

> [A]ssume a hypothetical worker the same age as the Claimant with the same work and educational background retaining light and sedentary exertional capacity...with these following limitations...no climbing or crawling, no more than frequent fingering and handling, no more than occasional overhead reaching, sit stand option at will, no exposure to industrial hazards, or concentrated exposure to lung irritants, no production race (sic) work or on a production line, and finally work in a low stress setting, defined as no more than occasional decision making or changes in the work setting involved.... [C]ould that hypothetical person work on a full time basis at unskilled work at either of the two exertional levels that I previously mentioned...?

(R. 334-35). The VE responded the individual could perform the following unskilled jobs at the light exertional level: (1) cashier - DOT 211462010, SVP 2; and (2) attendant at a self-service or a convenience store - DOT 299677010, SVP 2. (R. 335-36). The VE responded further that the individual could perform the following unskilled jobs at the sedentary exertional level: (1)

7

telephone quotation clerk - DOT 237367046, SVP 2; and (2) surveillance monitor - DOT 379367010, SVP 2. *Id.* The ALJ confirmed the above positions are consistent with the DOT with the exception of the sit and stand option and the low stress limitation. (R. 336). However, the VE testified to having personal or professional knowledge of the availability of such limitations as to the cited occupations. *Id.* The VE testified further that the identified occupations would have access to a restroom on site. (R. 337). The VE stated the identified occupations would allow roughly two twenty-minute breaks approximately four hours apart, excluding non-compensated breaks such as lunch or dinner. (R. 336).

In response to counsel's question whether the hypothetical individual could perform the identified occupations with the additional limitations of unpredictable and unscheduled restroom breaks and/or absences from work greater than three times per month, the VE answered in the negative and explained such limitations would eliminate all jobs at all exertional levels. (R. 337-339). Finally, counsel asked whether the hypothetical individual could maintain substantial gainful activity if limited to a maximum of two hours of sitting, maximum of up to one hour of standing, moderate limitation in grasping, handling and reaching and an ability to lift no more than five pounds. (R. 339). The VE responded in the negative. *Id.*

## DISCUSSION

### I. This case should not be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.

Claimant urges this Court to remand this case under sentence six of 42 U.S.C. § 405(g) ("sentence six") in order for the ALJ to consider evidence not previously presented to the ALJ or the Appeals Council. Pl.'s Mem. at 16-18. For the reasons provided below, this evidence does not meet the regulatory requirements for new evidence; and therefore, remand is not warranted.

8

Claimant must satisfy three prerequisites to merit a remand on the basis of newly discovered evidence: (1) the evidence must be new; (2) it must be material; and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g). Evidence is new if it is not duplicative or cumulative of that which is already in the record. *Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. § 404.970(b), and is there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)).

Assuming that Claimant has demonstrated good cau se for failing to incorporate the evidence into the record in a prior pro ceeding, the evidence proffered by Claimant, which chronicles her treatment for abdominal pain, chest pain, urinary tract problems, and knee, calf and low back pain between 1 March 2000 to 21 April 2005,[1] is neither new nor material.

### a. *Abdominal Pain*

With respect to Claimant's abdominal pain, the records reveal the following: (1) March 2000 discharge summary wherein Claimant was noted to be "feeling close to normal with decreased abdominal pain;" (2) CT scans associated with the March 2000 discharge, including "unremarkable" CT scan of the abdomen, CT scan of the pelvis which showed "nonspecific mild dilatation of small bowel loops in the right mid low pelvis which may represent ileus or developing small bowel obstruction," limited CT renal protocol noting a 1 mm non-obstructing

---

[1] An emergency physician record dated 10 June 2006 regarding low back pain post-dates the ALJ's decision. This record provides minimal information but does indicate a negative straight leg raising test.

9

left renal calculus, and an x-ray revealing a "normal frontal and lateral chest" and an enlarged liver; (3) 30 December 2001 ER visit for abdominal and left flank pain associated with nausea; (4) CT scans performed 5 June 2002, including a CT scan of the abdomen revealing a "dilated extrahepatic common bile duct of mild severity" and a normal liver, stomach, spleen, adrenals, pancreas and gallbladder, and a CT scan of the pelvis revealing "abnormal terminal ileum" possibly due to "early inflammatory bowel disease" or "infectious ileitis;" (5) a 7 June 2002 ER visit for abdominal pain; (6) 23 July 2003 assessment from the Zimmer Cancer Center noting weight loss and chronic diarrhea; and (7) 21 April 2005 assessment by Dr. Walter Gajewski with the Zimmer Cancer Center noting Claimant's use of lomotil up to four times a day for chronic diarrhea.

However, the above evidence is merely cumulative of Claimant's complaints of abdominal pain and left flank pain (R. 89, 102-03, 105, 115, 122, 210) and chronic diarrhea (R. 91, 115, 117, 122, 210, 215) appearing in the record. Moreover, some of the evidence is duplicative. First, the June 2002 CT scans revealing a dilated common duct and abnormal terminal ileum are noted by Dr. King in his 25 July 2002 and 10 September 2002 progress notes. (R. 26, 122, 124-25). Dr. King's progress notes also indicate concern regarding the possibility of inflammatory bowel disease and recognition of the discrepancy between the June 2002 CT scan and a 12 August 2002 colonoscopy which revealed a normal terminal ileum. (R. 122, 125, 212-13). The ALJ specifically acknowledged the August 2002 colonoscopy. (R. 26 ¶7). Second, the June 2002 CT scan of the abdomen appears in the administrative record as part of Exhibit 19F, which was cited by the ALJ. (R. 26, 216). Third, the record contains a 21 April 2005

10

consultation report by Dr. Gajewski, summarized by the ALJ in his written decision, wherein Dr. Gajewski noted Claimant's use of Lomotil three to four times daily. (R. 26 ¶8, 186).

    *b.    Chest Pain*

With respect to chest pain, the records reveal the following: (1) 12 May 2000 x-ray report revealing a "normal frontal chest;" (2) 12 May 2000 lung scan revealing normal lung ventilation; (3) 5 June 2002 CT scan of the frontal and lateral chest showing "no acute pulmonary abnormality;" and (4) 19 July 2003 CT scan revealing "negative left ribs" and "no acute cardiopulmonary abnormality." This evidence, however, is merely cumulative, as complaints of chest pain appear in records from Dr. Rafalowski, which are summarized by the ALJ. (R. 26 ¶1, 92).

    *c.    Urinary Tract Problems*

As for Claimant's urinary tract problems, the additional evidence contains (1) a 19 July 2002 diagnosis of hematuria secondary to radiation cystitis; and (2) a 9 August 2002 histology report regarding bladder biopsies taken on 15 July 2002, which revealed flat "mild chronic systitis with focal atypia" and "focal severe urothelial atypia." However, this evidence is duplicative of evidence in the record. In particular, Claimant's intermittent hematuria and multiple evaluations of her bladder are acknowledged by Dr. Gajewski in his 21 April 2005 progress note (R. 186) and by Dr. Powell in his 23 July 2003 progress note (R. 202). Furthermore, the July 2002 biopsies are acknowledged in Dr. Powell's 24 July 2002 and 23 July 2003 progress notes. (R. 26, 202, 214).

11

### d. *Elbow, Back, Knee and Calf Pain*

Finally, regarding Claimant's elbow, back, knee and calf pain, the records reveal the following: (1) 2 July 2000 emergency room visit for low back and left elbow injury due to a fall and an x-ray showing a normal left elbow; (2) 19 September 2002 Rheumatology Clinic medical examination indicating a normal gait, muscle strength 5/5 bilaterally, lack of knee tenderness and no limitation of movement and Dr. David Puett's finding that Claimant did not appear to have an arthritis problem; (3) 14 October 2002 Rheumatology Clinic follow-up for lab results, which showed no evidence of rheumat oid arthritis or that Claimant's pain is related to her lupus condition and a notation wherein Claimant was prescribed Neurontin and instructed to take glucosamine and chondroitin sulphate for joint pain; (4) 25 November 2002 Rheumatology Clinic progress note by Dr. Norman Robinson, indicating Claimant's exposure to hepatitis B, the possibility that joint pain may relate to hepatitis C, normal liver function tests, Claimant's refusal to take glucosamine and chondroitin sulphate as instructed and Claimant's admission to feeling much better and experiencing infrequent knee pain; and (5) 13 January 2003 liver biopsy exam and a histology report which revealed chronic hepatitis C with focal minimal necroinflammatory activity.

However, this evidence is neither new nor material. Claimant's complaints of low back and knee pain are noted in the ALJ's decision and appear throughout the administrative record. (R. 26, 90, 97, 107, 182, 184, 202). Also, the ALJ's decision notes that Claimant's liver biopsies on 13 January 2003 revealed chronic hepatitis C, a diagnosis also acknowledged by Dr. Powell. (R. 27 ¶3, 202). Moreover, some of this evidence is duplicative. First, the 23 September 2002 event reports associated with the September 2002 clinic note are part of the administrative

12

record. (R. 204-08). Second, the January 2003 report is part of the administrative record (*see* R. 112) and is referenced in Dr. King's 22 January 2003 progress note (R. 115-16), the summary of which appears in the ALJ's decision. (R. 26 ¶2). Third, the January 2003 liver biopsy exam appears in the administrative record. (R. 203).

Even if this Court classified the additional evidence as new evidence, Claimant has not demonstrated that this evidence is material. Claimant contends the new evidence provides the necessary support to accord Dr. Georgiev's opinion controlling weight. *See* Pl.'s Mem. at 17. However, the additional evidence, much of which appears in the record, does not undermine the ALJ's conclusion regarding immunosuppressive therapy nor does it undermine any other finding by the ALJ. Accordingly, this Court finds that the additional evidence submitted by Claimant does not warrant remand.

**II.     The ALJ did not err in evaluating the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, Boyan Georgiev, M.D. Pl.'s Mem. at 8-11. This Court disagrees.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."

13

20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171,178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at \*8 (W.D. Va. Sept. 5, 2006).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR. 96-2p, 1996 WL 374188, at \*5 (July 2, 1996).

The medical opinion at issue appeared in a questionnaire dated 3 March 2004, wherein Dr. Georgiev's responses indicated Claimant is unable to work. (R. 28-30, 171-78). While acknowledging Dr. Georgiev's treatment of Claimant since July 2003, the ALJ noted Dr. Georgiev's opinion "is not supported by any records from him." (R. 29). In fact, Dr. Georgiev

14

indicated that his diagnosis of Claimant's condition is supported by "old medical records"[2] from a hospital's rheumatology clinic. (R. 171 ¶4). However, most of the relevant records are CT scans and x-rays, which reveal nothing about Claimant's work abilities. (R. 195-201, 203-11, 216-17). Similarly, the progress notes by John Powell, M.D. (R. 202, 214-15) and the operative reports by William King, M.D. (R. 212-13, 218-19) contained within these same medical records reveal no limitatio ns. Also, Dr. Georgiev's treatment notes provide no insight as to work restrictions related to Claimant's impairments and in fact, indicate limited physical examinations. (R. 127-28, 131). Additionally, as noted by the ALJ, Dr. Georgiev's statement that Claimant was on immunosuppressive therapy is unsupported by evidence from other treating sources. (R. 29). In light of the lack of substantiation for the physician's opinion, as well as the conflicting evidence regarding Claimant's medical regimen, the ALJ was entitled to decline to afford controlling weight to the treating physician's opinion.

Substantial evidence supports the ALJ's decision to discount Dr. Georgiev's opinion. In particular, the ALJ's determination regarding the evidentiary weight of Dr. Georgiev's questionnaire incorporated the 20 C.F.R. § 404.1527(d) factors provided above, and the explanation for the decision to accord decreased evidentiary weight to the opinion explicitly

---

[2] Claimant contends the records relied upon by Dr. Georgiev are found in Exhibit 19 (R. 179-219). Pl.'s Mem. at 9. The Court notes that a portion of the records in Exhibit 19 post-date Dr. Georgiev's opinion. (R. 179-194). Claimant contends further that "the very reason the ALJ used to deny Dr. Georgiev's opinion controlling weight is now present before the court as the newly submitted evidence." Pl.'s Mem. at 17. However, as discussed previously, these additional reports from the Rheumatology Clinic indicate Claimant had a normal gait, muscle strength 5/5 bilaterally, lack of knee tenderness and no limitation of movement and that despite Claimant's refusal to take glucosamine and chondroitin sulphate as instructed, Claimant admitted to feeling much better and experiencing infrequent knee pain. *See* [DE-15-Medical/Surgical Clinic Notes dated 19 September 2002, 14 October 2002 and 25 November 2002]. The Court finds no support for Claimant's contention regarding Dr. Georgiev's opinion as to Claimant's work ability.

15

invoked two of the factors: (1) the evidence with which the physician supports his opinion and (2) the consistency of the opinion with the evidence from other treating physicians. (R. 29). It was the consideration of these factors that ultimately convinced the ALJ to accord decreased weight to Dr. Georgiev's opinion, as the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of the questionnaire. Additionally, the ALJ complied with SSR 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Georgiev's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir.1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Georgiev's opinion.

**III.    The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 11-13. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to

determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. SSR 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

17

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment and noted the various CT scans, x-rays and other laboratory tests contained in the record were unremarkable or within normal limits. (R. 26-30, 84-86, 94-95, 114, 138, 179, 182-83, 196); *see Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a [claimant's] complaints of pain and level of daily activities." (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. *See* SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's testimony as to daily activities, which includes limited household chores, cooking a light meal and driving on occasion, watching television, sitting on the couch and lying in bed; (2) diarrhea between four and seven times a day, chronic knee and ankle pain, back pain, breathing problems, significant weight loss, fatigue, agitation, sleeping

18

difficulties; and (3) use of a nebulizer once or twice a month, drowsiness caused by medications, and improvement of symptoms with Remeron and Neurontin (R. 25-28).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform less than the full range of sedentary exertional activities, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion, reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 25, 143-50). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV.   The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 13-16. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite her impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R.

19

§ 404.1545(a)(1). In determining RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and Claimant's medical history. As discussed above, the ALJ's opinion provides a review of the medical findings by numerous physicians, none of which supports Claimant's assertion that she is incapable of working. Pl.'s Mem. at 15; (R. 25-30). The ALJ's assessment also includes statements by Claimant found to be credible. Moreover, while two state agency consultants found Claimant had the RFC to perform medium work (R. 144, 277), the ALJ only found Claimant capable of a limited range of sedentary work. Finally, the ALJ's RFC assessment is in accord with (1) the lifting capacities and some of the postural and manipulative limitations found in Dr. Georgiev's opinion (R. 25, 30, 279, 353); (2) the manipulative and exertional findings of Dr. Dale Caughey,[3] a state agency

---

[3] Claimant contends Dr. Caughey discounted his own opinion in commenting "[t]he patient has multiple problems...but...documentation is lacking for me to confirm other than what I see...." (R. 139). *See* Pl.'s Mem. at 15. However, Dr. Caughey's comment was in regard to his impressions as to Claimant's impairments, not to his manipulative and exertional findings. In particular, Dr. Caughey noted "allegations" of autoimmune disease, SLE, hepatitis C with recent hepatic biopsy, radiation damage to the bowel and bladder, internal and external with chronic diarrhea but explained the lack of medical documentation to support the allegation. (R. 139). On the other hand, Dr. Caughey's opinion as to Claimant's manipulative and exertional limitations were based on a physical examination performed by Dr. Caughey. (R. 138, 141); *see* 20 C.F.R. § 404.1527 ("State agency medical...consultants...are highly qualified physicians...who are also experts in Social Security disability evaluation.").

medical consultant (R. 138); and (3) the psychological evaluations of Henry Tonn, M.S.,[4] (R. 28-29, 136), Richard Campbell, Ph.D. (R.25, 27, 287), Steve Salmony, Ph.D. (R. 154) and LaVonne Fox, Psy.D. (R. 290) wherein Claimant was found capable of performing simple tasks.[5] Finally, in compliance with SSR 96-8p and as discussed in detail above, the ALJ discussed his resolution of the opinion by Claimant's treating physician and its lack of support and inconsistency with the medical evidence as a whole. (R. 351-352).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

---

[4] The ALJ associated Henry Tonn's evaluation with Joseph Petty, Ph.D. (R. 28 ¶2). However, the report indicates Dr. Tonn performed the evaluation, while Dr. Petty served as the supervising psychologist. (R. 136).

[5] Citing *Hutsell v. Massanari*, 259 F.3d 707, 710 (8th Cir. 2001), Claimant contends that a medical opinion from an examining physician must support the ALJ's RFC finding. *See* Pl.'s Mem. at 14. However, "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *1. Thus, in determining a claimant's RFC, the ALJ must consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1. Moreover, the ALJ also must consider any medical opinions which reflect judgments about the nature and severity of the impairments and resulting limitations. *See* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188, at *1; SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). As held by the Fourth Circuit in *Craig*, however, the ALJ has the discretion to accord significantly less weight to the opinion of a treating physician when, as here, that opinion is inconsistent with substantial evidence in the record. *See Craig*, 76 F.3d at 590. In this case, the ALJ properly declined to adopt the opinions of Dr. Georgiev contradicted by the objective medical evidence, including other treating physicians an d findings by state agency medical and psychological consultants. (R. 29-30).

## CONCLUSION

For the reasons stated above, this Court recommends Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 23rd day of June, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge

22